UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ERNEST COX**                                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 24-2313**

**DANOS, LLC, et al.**                                            **SECTION: "G"(4)**

## ORDER AND REASONS

Before the Court is Defendant Chevron USA, Inc.'s ("Chevron") Rule 12(b)(6) Motion to Dismiss.[1] Chevron argues that Plaintiff Ernest Cox's ("Plaintiff") claims against it are grounded in allegations insufficient to raise a right to relief beyond a speculative level.[2] In opposition, Plaintiff argues he has presented sufficient factual allegations for each cause of action to survive this Motion to Dismiss.[3] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, this Court denies the motion without prejudice and grants Plaintiff leave to file an amended complaint.

## I. Background

Plaintiff brings claims against Defendants Danos, LLC ("Danos") and Chevron (collectively "Defendants") for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave

---

[1] Rec. Doc. 14.

[2] *Id.*

[3] Rec. Doc. 22.

1

Act ("FMLA").[4] Plaintiff was employed by Danos between 2008 and 2012, again between 2019 and 2020, and again between 2021 and 2023.[5]

While employed by Danos from 2008 through 2012, Plaintiff was contracted to work with Chevron.[6] In 2012, Plaintiff claims Chevron revealed its interest in hiring Plaintiff, but Plaintiff did not apply due to his father passing away.[7] Plaintiff chose to resign from Danos as an employee in 2012.[8]

In 2019, Plaintiff was hired by Danos again to contract with Arena Offshore.[9] In 2020, as part of this work, Plaintiff responded to a capsized ship where several people were lost at sea.[10] Plaintiff claims he was traumatized from this incident and experienced panic attacks and began suffering from Post Traumatic Stress Disorder and Depression.[11] Plaintiff was granted one month of leave under the FMLA and was subsequently terminated by Danos after returning to work.[12]

In late 2021, Chevron inquired about having Plaintiff work for them through Danos.[13] Danos rehired Plaintiff, and Plaintiff was assigned to work for Chevron as a Planner Scheduler.[14]

---

[4] Rec. Doc. 11-1 at 1.

[5] *Id.* at 4–6.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 4–5.

On November 11, 2022, Plaintiff was charged with a misdemeanor, and he was later found guilty of simple battery.[15] Plaintiff claims he let his immediate supervisor, Garrett Gamberi of Chevron ("Supervisor Gamberi"), know of this charge.[16] In January 2023, Plaintiff claims that Chevron Manager Nathan Taylor ("Manager Taylor") recommended he apply for the Logistics Coordinator position.[17] Plaintiff asserts he interviewed for this position in March 2023 and was offered the position in May 2023, with a June 5, 2023 start date.[18]

In March 2023, Plaintiff alleges he was diagnosed with aspirin-exacerbated respiratory disease ("AERD"), a chronic medical condition that includes asthma, recurrent nasal polyps, and sensitivity to aspirin and other non-steroidal anti-inflammatory drugs ("NSAID").[19] Plaintiff claims he let Supervisor Gamberi know of the condition.[20]

In May 2023, Plaintiff was prescribed a new Flonase nasal spray for his AERD.[21] He used it for the first time while working offshore on the Chevron Genesis platform.[22] Within five to ten minutes, Plaintiff began suffering from numbness and tingling.[23] Plaintiff asserts he sought treatment with the medical nurse, Preston Dedeaux ("Nurse Dedeaux").[24] Plaintiff claims Nurse

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

Dedeaux found him in a hypertensive crisis due to his elevated blood pressure and contacted the Chevron Emergency Medical Team.[25] The next day, Plaintiff returned to shore and sought treatment with his primary care doctor, who Plaintiff alleges found the nasal spray had a binding agent that caused an allergic reaction in Plaintiff.[26]

After Plaintiff returned home, Chevron requested that he take a drug test.[27] Plaintiff claims, unbeknownst to him, Nurse Dedeaux searched Plaintiff's locker and found Plaintiff's prescription medication and a black vial.[28] Plaintiff claims Nurse Dedeaux assumed that Plaintiff was snorting his prescription medication, and Nurse Dedeaux began spreading rumors throughout Chevron that Plaintiff was "clinically crazy" and a "drug addict."[29] Upon returning to Chevron's Genesis Platform for work, Plaintiff claims fellow employees ostracized him, and he was informed Nurse Dedeaux had spread these rumors about him.[30] Plaintiff says he reported Nurse Dedeaux's conduct to Supervisor Gamberi.[31] Plaintiff asserts Supervisor Gamberi informed Plaintiff that Nurse Dedeaux would be terminated.[32] However, Plaintiff alleges Nurse Dedeaux was allowed to continue working with Chevron at an alternate Chevron facility.[33]

On June 2, 2023, Plaintiff alleges he sought medical treatment for stomach pains and was

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 7.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 7–8.

[31] *Id.* at 8.

[32] *Id.*

[33] *Id.*

4

later informed he needed his appendix removed.[34] At that point, Plaintiff filed for FMLA leave and short term disability, and he was put on medical leave.[35] On June 16, 2023, while still on medical leave, Plaintiff discovered he had an enlarged spleen, enlarged lymph node, and possible leukemia lymphoma.[36] Plaintiff avers he alerted Chevron HR and his manager of these possible conditions.[37] Plaintiff claims, on June 23, 2023, Chevron HR representative Sophia Milagros Abascal rescinded his offer of employment with Chevron "based on whole or in part on the consumer or investigative consumer report mailed to you on June 5, 2023."[38] Plaintiff then returned to work for Danos, but he was terminated on August 13, 2023.[39]

Based on these events, Plaintiff alleges he was subject to a hostile work environment, disability discrimination, interference with his FMLA rights, and retaliation under both the ADA and the FMLA.[40]

On November 29, 2023, Plaintiff filed a Charge of Discrimination against Chevron and Danos with the EEOC.[41] On September 23, 2024, Plaintiff filed this action before this Court, and he filed an Amended Complaint on December 13, 2024.[42] On January 21, 2025, Chevron filed this

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 9.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 10.

[40] *Id.* at 24–33.

[41] *Id.* at 30.

[42] Rec. Doc. 1; Rec. Doc. 11.

Motion to Dismiss under Rule 12(b)(6).[43] Plaintiff filed an opposition on February 12, 2025.[44] Chevron filed a reply on February 18, 2025.[45]

## II. Parties' Arguments

### A.    Chevron's Arguments in Support of the Motion to Dismiss

Chevron asserts Plaintiff's claims against it under the ADA and FMLA are based on conclusory allegations that Danos and Chevron unlawfully discriminated and retaliated against Plaintiff.[46] Chevron raises five arguments in support of its motion.

First, Chevron argues for dismissal of Plaintiff's claim against it for a hostile work environment under the ADA.[47] Chevron argues the alleged harassment Plaintiff experienced was not based on his disabilities, which include depression, PTSD, and AERD.[48] Chevron avers Plaintiff's alleged unwanted harassment was based on rumors created by Nurse Dedeaux.[49] Chevron also contends the alleged harassment was "slight, at best" and thus not severe or pervasive enough to affect a term, condition, or privilege of Plaintiff's employment.[50] Chevron further asserts the alleged ostracism was short lived, only taking place over the course of two weeks from Plaintiff's medical incident until Plaintiff took medical leave.[51] Chevron states it took prompt,

---

[43] Rec. Doc. 14.

[44] Rec. Doc. 22.

[45] Rec. Doc. 38.

[46] Rec. Doc. 14-1 at 1.

[47] *Id.* at 8.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 9.

[51] *Id.*

remedial action when Plaintiff reported Nurse Dedeaux's conduct, which included removing Nurse Dedeaux from Plaintiff's work environment.[52]

Second, Chevron asserts Plaintiff's ADA disability discrimination claims fails.[53] Chevron points out its recission of Plaintiff's job offer was not based on Plaintiff's disabilities, but instead, was expressly on account of the consumer and investigative report that detailed Plaintiff's previous misdemeanors from 2017.[54] Plaintiff informed a Chevron supervisor that he had AERD in March 2023, but Chevron points out it still offered him the Logistics Coordinator position in May 2023.[55]

Third, Chevron argues that Plaintiff's ADA retaliation should be dismissed.[56] Chevron asserts Plaintiff did not engage in protected activity under the ADA.[57] Chevron argues Plaintiff could not have reasonably believed Chevron was in violation of the ADA due to the rumors spread and the alleged violation of Plaintiff's privacy rights through the search of his locker.[58] Even assuming Plaintiff engaged in protected activity, Chevron argues no causal connection exists between the alleged protected activity and the recission of the job offer.[59] Chevron claims it offered Plaintiff the job after Plaintiff complained of Nurse Dedeaux's actions, meaning no reasonable inference can be made that the termination of his job offer was based on knowledge of that

---

[52] *Id.* at 10.

[53] *Id.* at 11.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 13.

[57] *Id.*

[58] *Id.* at 14.

[59] *Id.* at 15.

complaint.[60]

Fourth, Chevron moves for dismissal of Plaintiff's FMLA interference claim.[61] According to Chevron, Danos was Plaintiff's primary employer responsible for providing FMLA leave, and Chevron, as the secondary employer, had no obligation to reinstate Plaintiff when he returned from FMLA leave.[62] Chevron claims it was Danos's decision to fire Plaintiff in August 2023.[63] Thus, Chevron argues no reasonable inference can be made that Chevron denied Plaintiff any benefits he was owed under the FMLA, and his interference claim must be dismissed.[64]

Fifth, Chevron requests dismissal of Plaintiff's FMLA retaliation claims. Chevron argues no allegation links Chevron to Danos's decision to fire Plaintiff.[65] Therefore, Chevron claims no plausible causal link can exist between Chevron and Plaintiff's FMLA retaliation claim.[66]

**B.     *Plaintiff's Arguments in Opposition to Chevron's Motion to Dismiss***

In opposition, Plaintiff asserts he was harassed based on his disability.[67] First, Plaintiff argues he has adequately pled an ADA hostile work environment claim against Chevron.[68] Plaintiff contends he "has specifically alleged that the hostile work environment arose from false rumors

---

[60] *Id.*

[61] *Id.*

[62] *Id.* at 17.

[63] *Id.* at 18.

[64] *Id.*

[65] *Id.* at 20.

[66] *Id.* at 21.

[67] Rec. Doc. 22 at 3.

[68] *Id.* at 3–9.

and ridicule related to his prescribed medication, which he takes for his disabilities."[69] Plaintiff asserts an employer need not directly reference an employee's disability for harassment to be considered disability based.[70] Plaintiff argues discriminatory conduct based on symptoms, treatment, or accommodations necessary for a disability can create a hostile work environment.[71]

Plaintiff contends that the harassment was severe and pervasive.[72] Plaintiff claims the harassment began with Nurse Dedeaux falsely accusing him of drug abuse and continued through ostracization from coworkers.[73] Plaintiff alleges his coworkers refused to associate with him, impairing his ability to work effectively and creating a workplace environment of exclusion and humiliation.[74] Plaintiff contends the hostile work environment directly led to his retaliatory firing because of the disruption it caused to Plaintiff's work environment.[75] Plaintiff claims Chevron chose to terminate Plaintiff rather than resolve the harassment he faced.[76] Plaintiff goes on to argue Chevron's remedial action was neither prompt nor effective.[77] Even though Plaintiff admits Nurse Dedeaux was eventually reassigned, Plaintiff claims the hostile work environment persisted and resulted in his termination.[78] Plaintiff argues the fact Nurse Dedeaux was reassigned does not

---

[69] *Id.*

[70] *Id.* at 4.

[71] *Id.*

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* at 7.

[78] *Id.*

absolve Chevron of the overall hostile work environment that was present and persisted.[79]

Second, Plaintiff asserts he adequately pled an ADA discrimination claim.[80] Plaintiff represents he suffers from PTSD, AERD, and depression, which substantially impair his quality of life.[81] He further represents he was qualified for the position with Chevron that was later rescinded.[82] Plaintiff asserts, once a *prima facie* showing of discrimination is made, the burden is on Chevron to prove a legitimate, non-discriminatory reason for an adverse employment action.[83] Plaintiff asserts Chevron has not made this showing, and the temporal proximity of Plaintiff not receiving the job to his alleged discrimination demonstrates enough of a causal link to avoid dismissal of the claim.[84]

Third, Plaintiff asserts he sufficiently pled an ADA retaliation claim based on his complaints of disability discrimination and a hostile work environment.[85] Plaintiff argues he engaged in protected ADA activity when he reported disability-based discrimination and the hostile work environment.[86] Plaintiff additionally argues he sufficiently pled that Chevron took an adverse employment action against him by terminating him.[87] The temporal proximity between his termination and his protected complaints, Plaintiff claims, is enough to support an inference of

---

[79] *Id.* at 8.

[80] *Id.* at 9.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 10.

[84] *Id.* at 11.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 12.

retaliation.[88] Plaintiff contends the fact Chevron offered him a job after learning of the complaints does not preclude a retaliation claim, and that Chevron's stated reasons for the recission are simply pretextual.[89]

Fourth, Plaintiff argues he properly alleged an FMLA interference claim.[90] Even though Chevron may have been a secondary employer, Plaintiff argues Chevron still played a role in preventing Plaintiff from exercising his rights under the FMLA by blocking his ability to return to work.[91] Plaintiff asserts Chevron made it clear Plaintiff would not be allowed to return to his contract position even though he was medically able to work.[92] Plaintiff argues FMLA interference occurred when Chevron refused to allow Plaintiff to return to work, forcing Danos to fire him due to a lack of work.[93]

Fifth, Plaintiff argues he adequately pled that Chevron retaliated against him by blocking his reinstatement after he took FMLA leave.[94] Plaintiff alleges Chevron ensured Plaintiff could not return to work following his FMLA leave, effectively making his reinstatement impossible and contributing to the adverse employment actions against him.[95] Plaintiff asserts Chevron does not need to be the entity that formally terminated him for their actions to lead to a retaliation claim.[96]

---

[88] *Id.*

[89] *Id.* at 16.

[90] *Id.* at 17.

[91] *Id.*

[92] *Id.* at 18.

[93] *Id.* at 19.

[94] *Id.*

[95] *Id.* at 20.

[96] *See id.*

Plaintiff additionally argues Chevron's reliance on his background check for recission does not negate his retaliation claim, but strengthens the inference of pretext.[97]

Sixth, Plaintiff argues Chevron has not disputed it was his joint employer.[98] Plaintiff claims he asserted and pled numerous facts demonstrating Chevron's control over his employment, including the fact Chevron dictated whether Plaintiff could return to his position after FMLA leave, which Chevron did not allow, and the fact that Chevron was directly involved in rescinding Plaintiff's job offer for pretextual reasons.[99] Even as a secondary employer, Plaintiff asserts, Chevron is still liable for adverse actions taken against him following his FMLA leave, particularly because it prevented his reinstatement.[100] If the Court finds that there are deficiencies in the allegations, Plaintiff additionally contends he should be granted the opportunity to amend the Complaint again rather than having his claims against Chevron dismissed outright.[101]

## C.    *Chevron's Arguments in Reply*

Chevron argues that Plaintiff contorts allegations made in the Amended Complaint.[102] According to Chevron, the Amended Complaint does not allege that Chevron rescinded his job offer for inconsistent reasons, that Plaintiff believed he was being subject to discrimination based on his medical condition, or that Plaintiff reported disability-based discrimination to Chevron's HR.[103] Chevron additionally reiterates its argument that Danos, not Chevron, terminated Plaintiff's

---

[97] *Id.*

[98] *Id.* at 22.

[99] *Id.*

[100] *Id.* at 23.

[101] *Id.* at 24.

[102] Rec. Doc. 23 at 1.

[103] *Id.* at 3.

employment.[104]

Chevron reiterates its argument that Plaintiff has not alleged harassment based on Plaintiff's purported disabilities.[105] Even if the harassment was based on Plaintiff's disabilities, Chevron argues the harassment was not severe or pervasive enough or over a long enough period of time to constitute a hostile work environment.[106] Chevron states it took prompt remedial action by removing Nurse Dedeaux from the facility where Plaintiff worked.[107] Chevron asserts its recission of Plaintiff's Logistics Coordinator job was based on his background check and there is no allegation that supports Plaintiff engaging in protected activity or a causal connection between Plaintiff's protected activity and the recission.[108] Chevron reasserts its position that it did not interfere with Plaintiff's FMLA rights and did not retaliate against Plaintiff by blocking Plaintiff's reinstatement.[109] Lastly, Chevron argues its avoidance of disputing its status as a joint-employer does not lead to admission of that fact, and allowing Plaintiff to amend the complaint again would lead to Plaintiff inventing facts to avoid dismissal.[110]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[111] A motion to dismiss for failure to

---

[104] *Id.* at 4.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.* at 5.

[109] *Id.* at 9.

[110] *Id.* at 9–10.

[111] Fed. R. Civ. P. 12(b)(6).

state a claim is "viewed with disfavor and is rarely granted."[112] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[113] "Factual allegations must be enough to raise a right to relief above the speculative level."[114] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[115]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[116] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[117] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[118] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[119] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[120] That is, the complaint must offer more than an "unadorned, the-defendant-

---

[112] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[113] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[114] *Twombly*, 550 U.S. at 555.

[115] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[116] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[117] *Iqbal*, 556 U.S. at 678–79.

[118] *Id.* at 679.

[119] *Id.* at 678.

[120] *Id.*

14

unlawfully-harmed-me accusation."[121] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[122] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[123]

## IV. Analysis

Chevron moves the Court to dismiss of all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each of Plaintiff's claims against Chevron will be analyzed in turn.

### A.    *Plaintiff's ADA Hostile Work-Environment Claim*

Plaintiff alleges Chevron subjected him to a hostile work environment under the ADA.[124] To establish a hostile work environment claim under the ADA, Plaintiff must show: "(1) he belongs to a protected group, (2) was subject to unwelcome harassment (3) based on his disability, (4) which affected a term, condition, or privilege of employment, and (5) [Chevron] knew or should have known of the harassment and failed to take prompt, remedial action."[125] "[H]arassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."[126] In determining whether harassment is sufficiently

---

[121] *Id.*

[122] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[123] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[124] Rec. Doc. 11-1 at 24.

[125] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001)).

[126] *Id.* (quoting *Flowers*, 247 F.3d 229, 236).

pervasive or severe, the Fifth Circuit instructs courts to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[127] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice to alter the terms and conditions of employment."[128]

Chevron does not appear to dispute that Plaintiff belongs to a protected class under the ADA based on his medical conditions of PTSD, AERD, and depression.[129] Chevron argues that Plaintiff's alleged unwelcomed harassment—being ostracized by his coworkers—was based on rumors started by Nurse Dedeaux.[130] Chevron claims the rumors are not "based" on Plaintiff's disabilities.[131] Plaintiff counters that his disabilities need not be specifically referenced for harassment to be considered "based" on his disabilities.[132]

Plaintiff has plausibly alleged a hostile work environment based on harassment related to his disabilities. Chevron freely admits the rumors spread by Nurse Dedeaux were related to Plaintiff's medications.[133] These include alleged rumors Plaintiff was snorting his prescribed medication and that he was a "drug addict" and "clinically crazy."[134] Plaintiff alleges these

---

[127] *Id.* (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017)).

[128] *Id.* (quoting *Patton*, 874 F.3d at 445).

[129] *See* Rec. Doc. 14-1 at 8.

[130] *Id.*

[131] *Id.*

[132] Rec. Doc. 22 at 3–4.

[133] Rec. Doc. 14-1 at 8.

[134] Rec. Doc. 11-1 at 7.

medications were prescribed specifically for his PTSD, AERD, and depression.[135] Ultimately, Plaintiff alleges the harassment occurred because of the medications prescribed to treat his disabilities. Thus, at the motion to dismiss stage, Chevron's argument that Plaintiff has not plausibly alleged harassment based on his disability fails.

Chevron next argues the alleged harassment does not rise to the level of severe or pervasive as required for a hostile work environment.[136] Courts consider several factors in assessing the severity of harassment when analyzing a hostile work environment claim, including the "frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[137] No single factor is required in demonstrating a hostile work environment.[138] Viewing Plaintiff's allegations in the light most favorable to him, Plaintiff plausibly alleged discriminatory conduct that a jury could find rises to the level of severe and pervasive. Plaintiff alleges his coworkers ostracized him after Nurse Dedeaux spread harmful rumors.[139] Plaintiff alleges that the ostracization was so severe that it affected his ability to complete his work.[140] Accordingly, Plaintiff plausibly alleged severe harassment affecting a term or condition of his work sufficient to survive this Motion to Dismiss.

Lastly, Chevron argues it "took prompt, remedial action to have the alleged harasser

---

[135] *Id.* at 29.

[136] Rec. Doc. 14-1 at 8.

[137] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

[138] *Id.*

[139] Rec. Doc. 11-1 at 7–8.

[140] *Id.*

removed from [Plaintiff's] work environment."[141] Prompt remedial action requires of employer's "appropriate remedial action, reasonably calculated to end the harassment," not simply demonstration of any remedial action.[142] Chevron points to its removal of Nurse Dedeaux from the Chevron facility where Plaintiff worked, claiming the removal shows adequate prompt remedial action.[143] However, Plaintiff's allegations go beyond harassment solely from Nurse Dedeaux, further encompassing allegations of ostracization from coworkers. Plaintiff claims Chevron allowed the hostile work environment to persist until Plaintiff's ultimate termination.[144]

As Plaintiff admits, firing Nurse Dedeaux was certainly "some action," [145] but whether it was adequate remedial action cannot be resolved at the Motion to Dismiss stage. The act of removing Nurse Dedeaux from the same facility as Plaintiff cannot summarily be said to reflect sufficient remedial action warranting dismissal of Plaintiff's claims. Thus, Plaintiff has plausibly alleged inadequate remedial action on behalf of Chevron. Accordingly, Plaintiff plausibly alleged facts sufficient for each claim of a hostile work environment under the ADA.

## B.    *Plaintiff's ADA Discrimination Claim*

Plaintiff also brings an ADA discrimination claim. "To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account

---

[141] Rec. Doc. 14-1 at 10.

[142] *Waltman v. Int. Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989).

[143] Rec. Doc. 14-1 at 10.

[144] Rec. Doc. 22 at 8–9.

[145] *Id.* at 9.

of his disability."[146]

Chevron does not dispute that Plaintiff has a disability or that Plaintiff was qualified for the position. Chevron contends that Plaintiff cannot establish the third element because there is a three-month gap between when Plaintiff notified Chevron of his disabilities and the recission of the job offer.[147] In *Gosby v. Apache Industry Services, Inc.*, the Fifth Circuit, borrowing from its ADA retaliation jurisprudence, explained that temporal proximity between an event that highlights an ADA-protected disability and an adverse employment action can establish causation at the *prima facie* stage of a disability discrimination case.[148] Chevron relies on a Fifth Circuit case finding "two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation."[149] Therefore, Chevron argues that the three-month gap between Plaintiff telling Chevron that he was disabled and the recission of his job offer does not carry Plaintiff's *prima facie* burden as a matter of law.[150]

In this case, Plaintiff notified his supervisor of his disabilities in March 2023, he was hired for a position in May 2023, and the job offer was rescinded on June 23, 2023. However, other events occurred in the interim. In May 2023, Plaintiff experienced a hypertensive crisis while working on the platform. He also took extended leave in June 2023 due to his medical conditions. These incidents occurred only a few weeks before the job offer was rescinded. Like in *Gosby*, the

---

[146] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021).

[147] Rec. Doc. 14-1 at 12.

[148] 30 F.4th 523, 527 (5th Cir. 2022).

[149] *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 885 (5th Cir. 2020).

[150] Rec. Doc. 14-1 at 12.

temporal proximity between these events and the job rescission are sufficient to establish a *prima facie* case.[151] At the motion to dismiss stage, where the Court must accept all of the allegations in the complaint as true, Plaintiff has sufficiently alleged that he was subject to an adverse employment decision because of his disability.

## C.    Plaintiff's ADA Retaliation Claim

Plaintiff also alleges Chevron retaliated against him in violation of the ADA.[152] The ADA "prohibits an employer from discriminating against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or heading under the ADA."[153] When a plaintiff presents indirect evidence of unlawful retaliation under the ADA, the plaintiff must show: "(1) [he] engaged in an activity protected by the ADA, (2) [he] suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action."[154]

Under the first prong, whether Plaintiff engaged in protected activity, Chevron claims Plaintiff's allegations only demonstrate his awareness of the rumors and his privacy rights being violated by Nurse Dedeaux's search of his locker, neither of which are rights protected by the ADA.[155] Chevron asserts "no reasonable inference can be drawn that [Plaintiff], when he

---

[151] *Gosby*, 30 F.4th at 527 ("The proximity of her diabetic episode on the job and her termination was sufficient to constitute a *prima facie* case that she was included in the group to be terminated for ADA-violative reasons.").

[152] Rec. Doc. 11-1 at 28.

[153] *Lyons v. Kayt Ind. Sch. Dist.*, 964 F.3d 298, 303–04 (5th Cir. 2020) (citing 42 U.S.C. § 12203(a)) (internal quotation marks omitted) (cleaned up).

[154] *Id.* at 304.

[155] Rec. Doc. 14-1 at 14.

complained about privacy rights and rumors that he was using narcotic drugs, reasonably believed he was opposing any act or practice made unlawful by the ADA."[156]

To be found to have engaged in protected activity, Plaintiff must only show he had a "'*reasonable belief* that the employer was engaged in unlawful employment practices' under the ADA,"[157] not that his employer *in fact* violated the law.[158] Plaintiff must then plead facts showing he opposed those acts.[159] Plaintiff alleges that Nurse Dedeaux spread rumors about Plaintiff after he found medications in Plaintiff's locker meant to treat Plaintiff's disabilities.[160] Plaintiff additionally alleges he faced subsequent ostracization from his coworkers based on those rumors.[161] Plaintiff alleges that he reported this activity to Supervisor Gamberi, complaining that they violated his privacy rights and threatened his job security.[162] These alleged facts demonstrate Plaintiff's reasonable belief that individuals at Chevron acted unlawfully and his subsequent report of that conduct.

Plaintiff also pleads facts to show he was subject to adverse employment action causally connected to this protected activity. Plaintiff claims his position as a Logistics Coordinator with Chevron was rescinded a few days after he reported the misconduct to Supervisor Gamberi.[163] This

---

[156] *Id.* (emphasis omitted).

[157] *Besser v. Texas Gen. Land Office*, 834 Fed. App'x. 876, 886 (5th Cir 2020) (quoting *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 Fed. App'x. 308, 313 (5th Cir. 2016) (per curiam)) (emphasis added).

[158] *Id.*

[159] 42 U.S.C. § 12203(a).

[160] Rec. Doc. 11-1 at 12.

[161] *Id.*

[162] *Id.* at 8.

[163] *Id.* at 22.

close temporal proximity between the alleged protected activity and the adverse employment action is sufficient to establish a *prima facie* case.[164]

### D.    *Plaintiff's FMLA Interference Claim*

Plaintiff also brings an FMLA interference claim against Chevron.[165] To establish a *prima facie* case of interference under the FMLA, Plaintiff must show: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA."[166] Chevron does not dispute Plaintiff adequately pled sufficient facts for the first four elements.[167] Plaintiff argues Chevron played an active role in ensuring Plaintiff could not return to work after he took FMLA leave, thereby interfering with his ability to exercise his rights pursuant to the FMLA.[168] Chevron argues, as a "secondary employer," Chevron had no duty to reinstate Plaintiff to his role subsequent his completion of FMLA leave that Plaintiff's primary employer, Danos, granted him.[169]

Under 29 C.F.R. § 825.106, within a joint employer relationship, one party is considered the primary employer while the other is labeled the secondary employer.[170] Chevron and Danos's

---

[164] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

[165] Rec. Doc. 11-1 at 27.

[166] *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (*citing Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. App'x. 312, 316 (5th Cir. 2013)).

[167] *See* Rec. Doc. 14-1 at 16.

[168] Rec. Doc. 22 at 17.

[169] Rec. Doc. 14-1 at 17.

[170] "Where two or more businesses exercise some control over the work or working conditions of the employee, the business may be joint employers under FMLA." 29 C.F.R. § 825.106(a). Within a joint employer relationship under the FMLA, there exists a primary employer and secondary employer each with distinct duties, with the primary employer primarily responsible for "[j]ob restoration," and the secondary employer "responsible for accepting the employee returning from FMLA leave in place of the replacement employee if the secondary employer

"obligations under the FMLA depend on whether it is the 'primary' or 'secondary' employer."[171]

Plaintiff pleads facts sufficient to establish a joint employer relationship between Chevron and Danos. Where two entities "exercise some control over the work or working conditions of the employee, the businesses may be joint employers" under the FMLA.[172] In the Amended Complaint, Plaintiff alleges that Chevron "exercised management and control over Planner Schedulers" while they were stationed on Chevron's bases, any modifications of Plaintiff's work schedule required Chevron approval, all vacation time required Chevron approval, all of Plaintiff's daily tasks were directed and assigned by Chevron, and Chevron conducted any performance reviews and coaching for Plaintiff.[173] Therefore, Plaintiff has plausibly alleged that Chevron was a secondary employer under the FMLA.

Under the FMLA, "[o]nly the primary employer is responsible for providing FMLA leave."[174] At the conclusion of FMLA leave "[j]ob restoration is the primary responsibility of the primary employer."[175] "The regulations permit, even expect, a secondary employer to rely on a primary employer to provide FMLA leave: a temporary employee's relationship with a secondary employer may end and never be restored without any violation of the FMLA."[176] Secondary employers only bear a conditional burden in reinstating employees after FMLA leave when the

---

continues to utilize an employee from the temporary placement agency, and the agency chooses to place the employee with the secondary employer[,]" among other duties. 29 C.F.R. § 825.106(e).

[171] *Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 345–46 (5th Cir. 2013).

[172] 29 C.F.R. § 825.106(a).

[173] Rec. Doc. 11-1 at 3.

[174] *Cuellar*, 731 F.3d 342, 346 (citing 29 C.F.R. § 825.106(c)).

[175] *Id.* at 347.

[176] *Id.*

primary employer requests that the employee be reinstated.[177] Secondary employers are also responsible "for compliance with the prohibited acts provisions with respect to its jointly employed employees."[178] These prohibited acts include "interfering with an employee's attempt to exercise rights under the Act, or discharging or discriminating against an employee for opposing a practice which is unlawful under FMLA."[179]

Plaintiff has failed to plead plausible facts to show that Chevron engaged in FMLA interference. Plaintiff has pled no facts to show that Danos attempted to place him back with Chevron when his FMLA leave was over.[180] The Amended Complaint only states Plaintiff's Danos manager, Scott Smith, informed him that he could not return to his contract role with Chevron when he returned from FMLA leave.[181] Accordingly, Plaintiff has not adequately pled FMLA interference by Chevron.

### E.    *Plaintiff's FMLA Retaliation Claim*

Lastly, Plaintiff alleges that Chevron engaged in retaliation under the FMLA. To state a *prima facie* case of retaliation under the FMLA, Plaintiff must allege "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) [he] was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of [his] request for leave."[182] The final element requires proof of a

---

[177] *Id.* at 347–48.

[178] *Id.* at 346.

[179] 29 C.F.R. § 825.106(e)

[180] *See* Rec. Doc. 11-1 at 14–16.

[181] *Id.* at 15.

[182] *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (internal quotation marks omitted).

causal link, and the same burden shifting framework described for ADA retaliation applies here as well.[183] As discussed above, Plaintiff does not allege a causal link between any FMLA protective activity and an adverse employment action by Chevron. For this same reason, Plaintiff fails to state an FMLA retaliation claim against Chevron.[184]

## V. Conclusion

Plaintiff has pled facts sufficient to state hostile work environment, discrimination, and retaliation claims against Chevron under the ADA. However, Plaintiff has not pled sufficient facts to state a FMLA interference or FMLA retaliation claim against Chevron. Short of granting a motion to dismiss, the Court may grant Plaintiff leave to amend the Complaint.[185] Considering that Plaintiff requests leave to amend to clarify any pleading deficiencies and considering that the prior amendment was filed without benefit of the above analysis, the Court exercises its discretion to allow Plaintiff to file a Second Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Chevron's Rule 12(b)(6) Motion to Dismiss[186] is **DENIED WITHOUT PREJUDICE**.

---

[183] *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021).

[184] Rec. Doc. 14-1 at 20.

[185] Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[186] Rec. Doc. 14.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave of Court to amend the Complaint within fourteen days of this Order to cure the deficiencies noted, if possible. If Plaintiff fails to amend the Complaint, or if Plaintiff amends the Complaint and the amendments do not cure the deficiencies identified in this Order, Chevron is granted leave to file responsive motions if necessary.

NEW ORLEANS, LOUISIANA, this __8th__ day of July, 2025.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**